IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THE MINOCQUA BREWING COMPANY
LLC, and KIRK C. BANGSTAD,

        Plaintiffs,

v.

THE TOWN OF MINOCQUA, MARK
HARTZHEIM, SUSAN HEIL, WILLIAM
FRIED, BRIAN FRICKE, ERIKA PETERSEN,
and DOES 1-10,

        Defendants.

OPINION and ORDER

24-cv-135-jdp

---

    Kirk Bangstad, the owner of the Minocqua Brewing Company, contends that the Town of Minocqua and members of its board have retaliated against him for his political speech and activities. The dispute has spawned two lawsuits. The first lawsuit is pending. *See Minocqua Brewing Company, LLC v. The Town of Minocqua*, No. 23-cv-578-jdp (W.D. Wis.).

    The second suit is this one. It's closely related to the first, but it is narrower in scope, and it raises a new issue. Specifically, plaintiffs here allege that defendants are refusing to grant Bangstad a permit to use town property for his business unless he agrees to dismiss the first lawsuit. Plaintiffs say that this demand is a breach of contract and a violation of their rights under the First Amendment.

    The matter before the court is plaintiffs' motion for preliminary injunction. Dkt. 2.[1] Plaintiffs haven't shown that they are likely to suffer irreparable harm if they do not get relief

---

[1] The motion was originally styled as a request for an "ex parte temporary restraining order and preliminary injunction." Dkt. 2. But the court denied the request for a restraining order and set briefing on the request for a preliminary injunction. Dkt. 10.

before the case is resolved on the merits, so the court will deny the motion. The court will consolidate this case with Case no. 23-cv-578-jdp because there is significant overlap in the facts and the law involved in both cases. It will be much more efficient to resolve the cases together.

BACKGROUND

Providing even a basic overview of the undisputed facts is more difficult than usual because the parties provided the court with so few documented facts. Plaintiffs' proposed findings of facts are mostly attempts to make argumentative points rather than providing a coherent narrative. And many of the facts they did propose are not supported by citations to the record. Defendants did not file any proposed findings of fact.

The parties' briefs suggest that most of the basic historical facts are not disputed. And the court's resolution of plaintiffs' motion for a preliminary injunction does not turn on any specific contested fact. So, to provide a comprehensible context for the motion, the court will pull from not just the parties' proposed findings of fact, but also from the record more generally and the allegations in the complaint. As a result, the events discussed in this section should be viewed as background information, not as findings of fact.

A.  **Factual background**

Plaintiffs own and operate a taproom in Minocqua, Wisconsin on Front Street. To the east of the property is Highway 51, also called Chippewa Street. This lawsuit concerns a piece of town-owned property that lies in between plaintiffs' property and the highway. The parties refer to that parcel as the "porkchop" because of its shape. It was originally part of Highway 51 until the highway was rerouted in the 1990s. An aerial view of the area is shown below:



Plaintiffs own what is designated as MI-3239 and MI-3240 on the aerial view. The porkchop is to the immediate right (east) of MI-3239. No town structures are on the porkchop, and defendants do not identify any purpose for which they are using the land.

In November 2022 and again in May 2023, plaintiffs applied for a conditional use permit with Oneida County to build a beer garden on the porkchop. The town board makes recommendations to the county on such permits, and the individual defendants are current or former members of the town board. The town board recommended that both of plaintiffs' applications be denied; the county did so. Neither side provides specifics about the reasons for denying the applications.

Plaintiffs ultimately constructed a driveway across the porkchop without the town's permission. Plaintiffs say that they did that because they "believed that the Town intended to use the two revocable license agreements to further unconstitutionally retaliate against" them.

Dkt. 1, ¶ 66. The town later blocked access to the driveway with landscaping rocks, which are still in place. A photo is shown below:



Defendants say that they placed the rocks for two reasons: (1) to mark the boundary between plaintiffs' property and town property; and (2) to prevent vehicles from damaging the porkchop and creating safety hazards. Dkt. 15, at 19.

In August 2023, plaintiffs sued the town and some of its board members for alleged violations of the First Amendment, the Due Process Clause, and the Equal Protection Clause. Among other things, plaintiffs alleged that defendants' recommendations to deny the permit applications related to the porkchop were retaliation for Bangstad's "progressive political activities," which included "publicly espous[ing] left-wing viewpoints, plaster[ing] his building with signs for Democratic political candidates, openly criticiz[ing] the TOWN's response to

4

the COVID-19 pandemic, and r[unning] for public office as a Democrat." Case no. 23-cv-578-jdp, Dkt. 1, ¶¶ 6, 88. That case is pending.

In October 2023, the county approved plaintiffs' conditional use permit for the beer garden. (Plaintiffs do not say what the town board recommended, and neither side explains why the county officials changed their minds.) A condition of the permit was to "enter into an agreement with the Town of Minocqua permitting access across" the porkchop. Dkt. 4-25, at 2. Plaintiffs are required to fulfill all the conditions of the permit before building the beer garden.

In January 2024, the town proposed a revocable license agreement that would give plaintiffs the right to construct and use a driveway that crosses the porkchop in exchange for putting up signs, maintaining the driveway, and maintaining insurance, among other things. In an email to defendants' counsel, plaintiffs' counsel wrote that the proposed agreement "looks good" and that "we are ready to sign" once the agreement incorporates "a notice to [plaintiffs' counsel] at this email address." Dkt. 4-28, at 3. In response, defense counsel wrote, "The Town believes that if this agreement is entered into . . . the lawsuit should be dismissed." *Id.* In a follow-up email, defense counsel wrote, "The Town hopes the agreement provides an opportunity for a clean slate for both sides and resolves the litigation; I am not sure I can convince them to sign it if a federal lawsuit is still hanging over their head." *Id.* at 4. Two days later, plaintiffs' counsel wrote that Bangstad had signed the agreement, and that "a dismissal is certainly not out of the question," but he would not agree to a dismissal of the lawsuit as a condition of receiving the license. *Id.*

So far, the town has not signed the license agreement.

5

**B. Overview of the claims and requested relief**

In their complaint, plaintiffs allege a long-running campaign by defendants to retaliate against plaintiffs for Bangstad's political views and speech. But the materials filed in support of plaintiffs' motion for a preliminary injunction are more narrowly focused on the more recent decision by the town declining to give plaintiffs a license to use the parcel known as the porkchop for plaintiffs' business after plaintiffs refused to dismiss Case no. 23-cv-578-jdp. The complaint asserts claims for both breach of contract and violations of the First Amendment, but the motion for a preliminary injunction is based on the First Amendment claim only.

As for the relief plaintiffs are seeking, the motion itself seeks broad and somewhat vague relief in the form of "ordering defendants to end their retaliatory conduct against plaintiffs and conform their unconstitutional conduct to the requirements of First Amendment to the Constitution of the United States." Dkt. 2. But in their complaint and brief plaintiffs seek more targeted relief in the form of an order requiring defendants to grant plaintiffs access to the porkchop. Dkt. 5, at 35, 39. The court will tailor its analysis accordingly.

## ANALYSIS

"A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001). A plaintiff seeking an injunction must make two threshold showings: a likelihood of success on the merits and irreparable harm. *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012). These are independent requirements, so if a plaintiff fails to show irreparable harm, the court may deny an injunction on that ground alone, without considering the plaintiff's likelihood of

success. *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022). A possibility of harm is not enough; the plaintiff must show that irreparable harm is likely. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

Plaintiffs say little about irreparable harm in their brief and proposed findings of fact. As an initial matter, plaintiffs characterize their motion as one seeking to simply preserve the status quo and prevent further harm. Dkt. 5, at 38. That's incorrect. The relief plaintiffs are seeking requires giving plaintiffs the right to use land owned by the town. Plaintiffs point to no evidence that the town had previously granted plaintiffs permission to use its land.

To show irreparable harm, plaintiffs rely primarily on the principle from *Elrod v. Burns* that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 373 (1976). But *Elrod* does not help plaintiffs because they don't identify any First Amendment freedoms they have lost. For example, plaintiffs do not identify any way that defendants are censoring their speech or preventing them from engaging in any expressive activity. Even in the absence of a direct prohibition on a First Amendment right, plaintiffs may show irreparable harm with evidence that defendants' conduct deterred them from engaging in protected conduct. *See International Association of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 450–51 (7th Cir. 2022). But plaintiffs point to no such deterrence or even potential deterrence in this case. For example, plaintiffs do not allege that they have limited their speech or their litigation activities or that they have any intention to limit constitutionally protected conduct in the future. To the contrary, plaintiffs say that Bangstad has "refused to allow the rights he holds so dearly as

an American to be violated and [he] fought back" against defendants with more speech. Dkt. 1, ¶ 23.[2]

Another type of potential harm suggested by plaintiffs' requested injunction is lack of access to his parking lot. Plaintiffs insist in their brief that "any injunction would be little more than an order to the TOWN to move a few landscaping rocks" that are blocking the driveway to Highway 51. Dkt. 5, at 35. But plaintiffs do not explain what harm those landscaping rocks are causing him. It is undisputed that cars can reach plaintiffs' property using the driveway on Front Street. Plaintiffs do not allege that the Front Street entrance is obstructed, hidden, or inconvenient, and they do not explain why they need two separate entrances for cars.

In their brief, plaintiffs say that they "will lose $300,00[0] in revenue" if the court does not grant the injunction. *Id.* That allegation was not included in plaintiffs' proposed findings of fact as required by the court's procedures.[3] Even in their brief, plaintiffs provide no context for the allegation. In his declaration, Bangstad says that he will lose "nearly $300,000 in revenue" if he is unable to open a beer garden for the summer season of 2024. Dkt. 3, ¶ 6. This statement appears to be related to plaintiffs' request for an injunction ordering the town "to enter into the revocable license agreement they offered plaintiffs on January 12, 2024." Dkt. 1, ¶ 129. One of the conditions of plaintiffs' permit to build a beer garden is to first "enter into an agreement with the Town of Minocqua permitting access across" the porkchop. Dkt. 4-25,

---

[2] To prove a retaliation claim, a plaintiff does not have to show that the retaliation actually forced him to back down. A plaintiff must show only that a person of "ordinary firmness" would likely be deterred from future speech. *Douglas v. Reeves*, 964 F.3d 643, 646–47 (7th Cir. 2020). But to obtain injunctive relief, Bangstad has to show that he will actually suffer some injury without the injunction.

[3] Procedure to be Followed on Motions for Injunctive Relief, *available at* https://www.wiwd.uscourts.gov/local-rules.

at 2. The court understands plaintiffs to be saying that they need the license from defendants to build the beer garden, so withholding the license will prevent plaintiffs from making more money than they otherwise could.

There are three problems with this argument. First, plaintiffs have been seeking permission to build a beer garden on the porkchop since 2022, and they allege that each of defendants' refusals since then to grant such permission was the result of First Amendment retaliation. So plaintiffs were in the same position before the summer of 2023 as they are now, but they did not seek preliminary injunctive relief then, and they did not seek preliminary injunctive relief when they filed their first lawsuit later in 2023. Plaintiffs' lengthy delay undermines their assertion that they will suffer irreparable harm if they can't build a beer garden before this summer. *See Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983); 13 *Moore's Federal Practice* § 65.22[1][b] (3d ed. 2023).

Second, plaintiffs do not dispute defendants' assertion that permission from the town to use part of the porkchop as another driveway is just one of several other conditions of the permit that plaintiffs must satisfy before they may use the porkchop as a beer garden. For example, defendants point to requirements to construct a curb on plaintiffs' side of the porkchop to prevent vehicles from driving over it, create parking spaces, put up signs for traffic flow, and comply with the Americans with Disabilities Act. Dkt. 15, at 11–13, 19–21, 45, 47. Thus, even if the court were to grant plaintiffs' request for an injunction, it would not mean that plaintiffs could build a beer garden. In their reply brief, plaintiffs do not dispute that they must fulfill these other requirements, but they say that "there is no reason for Plaintiffs to begin to fulfill any of the other conditions of their [permit] unless they secure access to U.S. highway 51, because they won't be able to build their beer garden and enjoy the returns on

their investments." Dkt. 23, at 14. The court understands plaintiffs to be saying that they do not want to risk spending more money on complying with other permit conditions until they know whether defendants will grant the license. Regardless of whether that's a reasonable position, it means that acquiring the license is only one step toward building a beer garden. Plaintiffs put in no evidence regarding whether they could fulfill the other conditions in time for the summer season.

Third, and most important, the $300,000 that plaintiffs say they will lose does not qualify as irreparable harm because it could be remedied with a damages judgment. "[A] party seeking a preliminary injunction must demonstrate, among other things, that traditional legal remedies, such as money damages, would be inadequate." *D.U. v. Rhoades*, 825 F.3d 331, 339 (7th Cir. 2016). Plaintiffs do not even attempt to explain why money damages would be inadequate to remedy any harm that they may suffer before the merits are decided in this case.

For all of these reasons, the court will deny plaintiffs' motion for a preliminary injunction.

The parties should not construe this ruling as a reflection of the court's view of the merits. Plaintiffs submitted emails from defendants' counsel suggesting that the town was ready to give plaintiffs a license to use the porkchop, but it withheld the license because plaintiffs would not agree to dismiss Case no. 23-cv-578-jdp. Although it was defendants who proposed the licensing agreement, defense counsel wrote that "the Town believes that if this agreement is entered into, . . . the lawsuit should be dismissed," and that the town might not sign the agreement "if a federal lawsuit is hanging over [its] head." Dkt. 4-28.

Defendants identify no reason they declined to sign the agreement other than plaintiffs' refusal to dismiss the case. Instead, they say that their counsel's emails were part of settlement

negotiations, so they are inadmissible under Federal Rule of Evidence 408. That is incorrect because "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated." *Boyer v. Advanced Correctional Healthcare, Inc.*, Nos. 20-cv-1123 and 22-cv-723-jdp, 2023 WL 3978147, at *11 (W.D. Wis. 2023) (internal quotation marks omitted). As applied to this case, that exception to the rule means that exclusion is not required "when the claim is based upon some wrong that was committed in the course of the settlement discussions" because the new wrong creates a new claim. 23 Wright & Miller, *Fed. Prac. & Proc. Evid*. § 5314 (2d ed. 2023). Even assuming that the emails were part of settlement negotiations, the negotiations were for plaintiffs' claim that defendants were retaliating against him for his political speech; the new claim based on the emails is that defendants are retaliating against him for maintaining a lawsuit. The claims are related, but distinct.

The general rule is that the government may not withhold a benefit or privilege because of a plaintiff's litigation activities. *See Friends of Blue Mound State Park v. Wisconsin Department of Natural Resources*, 654 F. Supp. 3d 807, 819–25 (W.D. Wis. 2023). But regardless of whether plaintiffs are likely to succeed on the merits, the court cannot grant preliminary injunctive relief in the absence of any showing of irreparable harm. If this case reaches the summary judgment stage, defendants will have to be prepared to explain why they proposed an agreement only to withhold it after plaintiffs refused to dismiss Case no. 23-cv-578-jdp.

The remaining question is one that defendants raised in their opposition brief, which is whether this case should be consolidated with Case no. 23-cv-578-jdp. The court concludes that consolidation is appropriate. The two cases are closely related, and both cases involve allegations that the town and its board are retaliating against plaintiffs for exercising their constitutional rights. As already discussed, this case does raise new claims. But even the new

11

claims seek some of the same relief as in Case no. 23-cv-578-jdp, namely, an injunction requiring defendants to give plaintiffs access to the porkchop. Because the claims and requested relief in both cases are intermingled, and this case adds few facts, it makes sense to resolve both cases together. In their reply brief, plaintiffs do not identify any reason why consolidation would be inappropriate. So the court will issue a separate order in both cases that consolidates the cases for all purposes under Federal Rule of Civil Procedure 42.

ORDER

IT IS ORDERED that the motion for a preliminary injunction filed by plaintiffs Minocqua Brewing Company, LLC, and Kirk Bangstad, Dkt. 2, is DENIED.

Entered April 15, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge